# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

BOBBY D. CLAYTON,

     Petitioner,

     v.                                      Case No. 09-C-965

MICHAEL BAENEN, WARDEN
GREEN BAY CORRECTIONAL INSTITUTION,[1]

     Respondent.

## DECISION AND ORDER

On October 8, 2009, petitioner Bobby D. Clayton filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that his state court conviction and sentence were imposed in violation of the Constitution. The petitioner was found guilty by a jury of one count of (1) armed robbery by use of force, as a party to a crime and one count of (2) possession of a firearm by a convicted felon, both with habitual criminality enhancers. On October 25, 2006, he was sentenced to eleven years imprisonment on the armed robbery charge, consisting of six years' confinement and five years' extended supervision, and six years on the felon in possession charge, consisting of two years' confinement and four years' extended supervision, to be served consecutively.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was

---

[1] By letter dated August 9, 2011, the petitioner advised the court that he was moved from Fox Lake Correctional Institution to Green Bay Correctional Institution. Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts requires that the petition name as a respondent the state officer who has custody if the petitioner is currently in custody under a state court judgment. Accordingly, the court substituted Green Bay Correctional Institution Warden Michael Baenen as the respondent.

assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(b) (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

The petitioner challenges the judgment of his conviction, which was entered on June 22, 2006, asserting sixty claims on the following constitutional grounds: (1) ineffective assistance of counsel, (2) prosecutorial misconduct, and (3) judicial error.

United States District Judge William Griesbach conducted a preliminary examination of the petition in accordance with Rule 4 of the Rules Governing § 2254 Cases. After reviewing the petitioner's lengthy petition, Judge Griesbach concluded that without the benefit of the full record, he could not separate legitimate claims from meritless claims. Recognizing that the petitioner likely failed to exhaust the vast majority of his claims, on October 15, 2009, Judge Griesbach ordered the respondent to file a brief stating his position as to which, if any, of the petitioner's claims were exhausted and whether the entire petition should be dismissed.

The respondent filed a brief pursuant to Judge Griesbach's order, and the petitioner promptly responded. This court reviewed the parties' submissions. By order dated July 19, 2010, the court determined that of the petitioner's sixty claims, only one had not been exhausted. The court dismissed the petitioner's one unexhausted claim, that "ineffective assistance of Appellate Counsel, is shown by presenting a Petition For Review to the Wisconsin Supreme Court, and not even getting the Proper Heading on the Petition." (Petition at 15). Of the remaining fifty-nine claims, the court determined that one was fully and fairly presented to the state court, and fifty-eight were either never presented or not fairly presented to the state court. The court also concluded that as of the date of its decision, the petitioner lacked any

available state remedy for those fifty-eight claims not fully and fairly presented to the state court. Therefore, the petitioner had exhausted his remaining fifty-nine claims.

As a final matter, the court concluded that "it [did] <u>not</u> plainly appear from the 'face of the petition' that the petitioner [was] <u>not</u> entitled to relief" on the petitioner's fifty-nine exhausted claims. Thus, this court ordered the respondent, Larry Jenkins, Warden at Fox Lake Correctional Institution, to answer or otherwise respond to the petition for a writ of habeas corpus. The respondent answered the petition and the parties subsequently briefed the petition Therefore, the petition now is ready for disposition and will be addressed herein.

## APPLICABLE LAW

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214 (1996) which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This provision entitles federal courts acting within their jurisdiction to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. <u>Lindh v. Murphy</u>, 96 F.3d 856, 870-877 (7th Cir. 1996), <u>rev'd on other grounds</u>, 521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and

mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" Hereford v. McCaughtry, 101 F. Supp.2d 742, 746 (E.D. Wis. 2000) (quoting Sanchez v. Gilmore, 189 F.3d 619, 623 [7th Cir. 1999]).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000) (quoting Williams v. Taylor, 120 S. Ct. 1495, 1519 [2000]). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> under the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

Washington, 219 F.3d at 628. The court went on to explain that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" Id. (quoting Williams, 120 S. Ct. at 1523).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." Hennon v. Cooper, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." Hall v. Washington, 106 F.3d 742, 748-49 (7th Cir. 1997). In Morgan v. Krenke, the court explained that:

> [u]nreasonableness is judged by an objective standard and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting <u>Williams</u>, 120 S. Ct. at 1522). Therefore, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. <u>Washington</u>, 219 F.3d at 628.

**RELEVANT FACTUAL BACKGROUND**

The Wisconsin Court of Appeals set forth the facts relevant to this petition in its May 21, 2009, decision:

> The complaint against Clayton alleged that he and two other men stole sports jerseys from Michael Rueger at gunpoint. The evidence against Clayton at trial included testimony that Clayton and his accomplices drove away from the robbery scene with sports jerseys that included a Franco Harris Pittsburgh Steelers jersey. Rueger recorded the license number of the getaway car and called police. Officers quickly located the car and arrested Clayton after discovering him hiding in the bathtub in a nearby apartment. He was wearing a stolen Franco Harris jersey when arrested, and other stolen jerseys and a firearm were also found in the apartment with him. Officers brought Rueger to the arrest scene and he identified Clayton as one of the robbers. He also identified Clayton as one of the robbers at trial. He testified that he had never seen Clayton before the robbery.
>
> . . .
>
> Clayton denied robbing Rueger. He testified that he had purchased the Franco Harris jersey and another jersey from Rueger a few weeks before his arrest. He said that he was supposed to pay Rueger $20 and some cocaine, but instead paid $20 and some fake cocaine. The defense theory was that Rueger concocted his story of the robbery, presumably to gain revenge against Clayton for cheating him.

(Respondent's Brief on Petitioner's Exhaustion of State Court Remedies [Respondent's Exhaustion Brief], Exh. E at 1-3.)

Following his conviction, the petitioner, by counsel, filed a motion for postconviction relief in the Dane County Circuit Court pursuant to Wis. Stat. §§ 809.30 and 974.02. In his motion, the petitioner asserted, among other things not relevant to the present petition, that his trial

counsel was ineffective for failing to object to or move to suppress a show-up identification.[2] The circuit court held that counsel's decision not to move for suppression was not deficient, but rather a reasonable tactical decision given the defense strategy of showing that Michael Rueger was implicating the petitioner because of an earlier failed drug deal between the two of them. This defense strategy relied on the two parties knowing each other. Suppression of the identification would have been fruitless because the defense's theory relied on the parties knowing each other and because Mr. Rueger could have identified the petitioner in court. The trial court also determined that counsel's failure to move for suppression did not prejudice the defendant because a second witness also implicated the petitioner and because the petitioner was wearing one of the stolen jerseys when he was taken into police custody.

The petitioner appealed the judgment and the circuit court's denial of postconviction relief to the Wisconsin Court of Appeals, maintaining that counsel's failure to object to the admission of evidence relating to the state's key witness's show-up identification violated his right to effective assistance of counsel. In support, the petitioner asserted that had counsel moved to suppress the identification before trial or objected to the identification at trial pursuant to State v. Dubose, 2005 WI 126, 285 Wis. 2d 143, 699 N.W.2d 582, the state would have been precluded from eliciting any testimony regarding the identification of the petitioner as the

---

[2] The petitioner also alleged that his trial counsel was ineffective for failing to introduce evidence of a state witness' prior convictions. In addition, the petitioner claimed that the trial court committed plain error and that the interests of justice necessitated a new trial. He also requested a sentence credit, which the parties later stipulated to. The petitioner does not assert these claims in his petition. He does raise the issue of the state witness' prior convictions not being admitted into evidence, but on grounds of prosecutorial misconduct, not ineffective assistance of counsel.

gunman.  Without an identification, the petitioner contended that the likelihood of a conviction would have been substantially decreased.[3]

The Wisconsin Court of Appeals rejected the petitioner's argument, holding that counsel's decision not to move for suppression of the show-up identification was a reasonable exercise of professional judgment because "a reasonable attorney might determine that a misidentification defense was not a viable option" given the fact that the petitioner was apprehended wearing one of the stolen jerseys shortly after the robbery was reported. (Respondent's Brief on Petitioner's Exhaustion of State Court Remedies [Respondent's Brief], Exh. E at 4.)  The appellate court concluded that a reasonable defense would have to explain how the petitioner came into possession of the jersey and that "a misidentification defense would not have provided that explanation."  (Id.)  In addition, the court concluded that suppression of the show up identification would not have prevented the victim from identifying the petitioner in court, as he did at trial.

Thereafter, the petitioner's counsel filed a petition for discretionary review with the Wisconsin Supreme Court.  The court denied review on August 17, 2009.  (Id., Exh. H.)

One month before filing the present petition for a writ of habeas corpus with this court, the petitioner, proceeding pro se, filed a motion for postconviction relief pursuant to Wis. Stat. § 974.06.  He asserted that 1) he was improperly charged with two crimes arising from one incident  and that the trial court therefore erred by imposing consecutive sentences, and 2) that he was improperly assessed court costs and a DNA surcharge twice instead of once.  The trial

---

[3] In Dubose, the Wisconsin Supreme Court held that evidence obtained from out-of-court show up identifications are inherently suggestive and are not admissible unless, based on the totality of the circumstances, the procedure was necessary. 285 Wis. 2d at ¶ 33. According to Dubose, a show-up identification is not necessary unless the police lack probable cause to make an arrest, or, as a result of other exigent circumstances, could not have conducted a lineup or photo array.  Id.

court concluded that the petitioner was barred from bringing this postconviction motion under Wis. Stat. § 974.06(4) and State v. Escalona-Naranjo, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), which prohibit successive postconviction motions. (Answer to Petition for Writ of Habeas Corpus, Exh. B at 3). The court also rejected the petitioner's claims on the merits. Id. The petitioner did not appeal the court's decision.

## ANALYSIS

The petitioner's petition for a writ of habeas corpus asserts sixty claims based on ineffective assistance of counsel, prosecutorial misconduct, and judicial error.[4] As the court previously detailed, this court ruled in its July 19, 2010, decision and order that the petitioner had exhausted fifty-nine of his sixty claims. Of the remaining fifty-nine claims, the petitioner had fairly presented only his twelfth claim, that his counsel was ineffective for failing to object to the show-up identification, to the state courts. The other fifty-eight claims had either not been raised on appeal at all, or were denied in a successive motion for postconviction relief, which the petitioner did not appeal. Because the petitioner was left with no further remedies available in state court, the court concluded that the petitioner had exhausted these fifty-eight claims. Although the respondent asked the court to also find that the petitioner had defaulted on these fifty-eight claims for failure to fairly present them to the state courts, the court declined to do so because the petitioner did not address the procedural default issue based on Judge Griesbach's order, which asked the respondent only to address the issue of exhaustion. Thus, the court will

---

[4] Because the majority of these claims have been defaulted, the court will not provide an exhaustive list of the petitioner's individual claims.

begin by determining whether the petitioner has procedurally defaulted fifty-eight of his remaining claims.

## Procedural Default

The respondent maintains that with the exception to the petitioner's claim of ineffective assistance of counsel predicated on counsel's failure to object to the show-up identification, the petitioner has procedurally defaulted each of his claims. Although the petitioner asserts that he has not procedurally defaulted his claims, his reasons for this assertion are not entirely clear. In his brief in support of his petition, the petitioner discussed only the merits of his claim. He did not address procedural default until the respondent raised the issue in his brief in opposition to the petition. In contrast, the respondent's opposing brief only addressed procedural default and not the merits of the petitioner's fifty-eight claims. In reply, the petitioner's discussion of procedural default is limited to stating agreement or disagreement with each statement made by the respondent in his opposition brief. The petitioner does not address the standards he needs to meet to overcome procedural default. The court construes petitioner's brief liberally, however, Haines v. Kerner, 404 U.S. 519, 520 (1972); Marshall v. Knight, 445 F.3d 965, 969 (7th Cir.2006), and has identified the following as petitioner's arguments as to why this court should review his claims.

First, the petitioner maintains that he did not raise all of his claims in his § 974.02 motion for postconviction relief because his appellate counsel included only those claims she thought had merit. Second, he contends that he tried to exhaust his claims by filing a pro se § 974.06 postconviction motion in state court to present all factual claims, but that his related motion for an evidentiary hearing, which was needed to build a court record, was denied. Third, the

petitioner asserts that this court should hear his claims because he has no money to hire an attorney or any experience in litigation. Fourth, the petitioner asserts that appealing the circuit court's denial of his pro se § 974.06 postconviction motion would have been pointless because Escalona-Naranjo would bar any relief. Fifth, the petitioner contends that he has new evidence that establishes his innocence.

Before a federal court can consider a petition for a writ of habeas corpus on its merits, the petitioner must (1) exhaust all remedies available in the state courts and (2) fairly present any federal claims in state court first, or risk procedural default. Bocian v. Godinez, 101 F.3d 465, 469 (7th Cir. 1996) (citing Picard v. Connor, 404 U.S. 270, 275 [1971]).

The exhaustion doctrine is "designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. 509, 518 (1982). Therefore, a habeas petitioner may not resort to federal court without first giving the state courts a fair opportunity to address his claims and correct any error of a constitutional magnitude. Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001) (citing 28 U.S.C. § 2254[b],[c]; O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 [1999]).

To satisfy that requirement, the petitioner must present both the operative facts and the legal principles that control each claim to the state judiciary in the time and manner required by state law; otherwise a petitioner will forfeit federal review of his claim. Briley, 243 F.3d at 327; see also, Chambers v. McCaughtry, 264 F.3d 732, 738-89 (7th Cir. 2001). Therefore, if a claim is fairly presented to the circuit court in a motion for postconviction relief, but is not appealed to the state appellate courts, or if a claim is never raised in state court, then that claim is considered procedurally defaulted. See Sullivan, 526 U.S. at 845.

Once a court determines that the petitioner procedurally defaulted on his claim, it cannot reach a decision on the merits of that claim unless the petitioner can demonstrate: "(1) a cause for and actual prejudice arising from failing to raise the claim as required or (2) that enforcing the default would lead to a 'fundamental miscarriage of justice.'" Gomez, 350 F.3d at 679 (citing Wainwright v. Sykes, 433 U.S. 72, 87 [1977]).

To prove cause and actual prejudice, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). A showing by the petitioner that the factual or legal basis for a claim was not reasonably available to counsel or a showing that interference by officials made compliance impracticable also constitutes actual prejudice. Id. The fundamental miscarriage of justice exception applies only when the petitioner is actually innocent of the crime for which he was charged, which occurs only in "extremely rare" and "extraordinary case(s)." Gomez, 350 F.3d at 679 (citing Schlup v. Delo, 513 U.S. 298 [1995]).

> To support a colorable claim of actual innocence the petitioner must come forward with "new reliable evidence . . . that was not presented at trial." [Schlup, 513 U.S. at 324]. The petitioner must also establish that "it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 327.

Gomez, 350 F.3d at 679. Where a petitioner uses actual innocence as a "gateway" for having otherwise barred constitutional claims heard, as opposed to claiming that his actual innocence alone entitles him to habeas relief, the petitioner need not present newly "discovered" evidence. Id. (citing Herrera v. Collins, 506 U.S. 390 [1993]). All that Schlup requires is that the new evidence be reliable and new to the extent that it was not presented at trial. 513 U.S. at 324.

Turning to the fifty-eight claims that the respondent asserts were procedurally defaulted, only those related to the petitioner's consecutive sentences were raised in any court,

specifically, the petitioner's pro se § 974.06 motion for postconviction relief filed with the Dane County Circuit Court. All other claims were raised for the first time in the petitioner's petition for habeas relief.

Because the petitioner did not appeal the circuit court's § 974.06 postconviction motion ruling to any state appellate court or raise his other claims in any state court within the required time-frame, the court concludes that the petitioner did not fairly present such claims to each level of the state court. Therefore, the petitioner's remaining fifty-eight claims are procedurally defaulted, and this court is barred from reviewing these claims unless the petitioner can show (1) cause and actual prejudice or (2) a 'fundamental miscarriage of justice. Gomez, 350 F.3d at 679 (citing Wainwright v. Sykes, 433 U.S. 72, 87 [1977]). The petitioner has failed to make either showing.

With regard to cause, the petitioner asserts that because his appellate counsel included only those claims she thought had merit in his § 974.02 motion for postconviction relief, the petitioner was procedurally barred from raising his other claims in his subsequent pro se §976.04 motion for postconviction relief. In other words, he appears to contend that ineffective assistance of appellate counsel establishes cause. Although Ineffective assistance of counsel may be deemed "cause" for a procedural default, a petitioner asserting ineffective assistance as "cause" must present such claim to the state courts as an independent claim before he may use such grounds to establish cause for a procedural default. Murray v. Carrier, 477 U.S. 478, 488, 489 (1986). Here, the petitioner did not assert in any state court that his appellate counsel was ineffective for refusing to raise claims she believed to be meritless. Therefore, the petitioner has not established cause.

- 12 -

Despite failing to raise this ineffective assistance of counsel claim in any state court, the petitioner maintains that this court should excuse his default because such a claim would have been barred by Escalona-Naranjo. However, the petitioner's contention is inaccurate. Claims of ineffective assistance of postconviction counsel made in a collateral attack pursuant to Wis. Stat. § 974.06 are not barred by Escalona-Naranjo where postconviction counsel's deficiency constitutes the basis for the petitioner's failure to raise claims in the original postconviction motion. See State ex rel. Rothering v. McCaughtry, 205 Wis.2d 675, 682, 556 N.W.2d 136 (Ct. App.1996). Similarly, challenges to appellate counsel's performance are not barred by Escalona-Naranjo. Challenges to appellate counsel's performance may be brought by filing a writ of habeas corpus with the Wisconsin appellate court that heard the original appeal. State v. Knight, 168 Wis. 2d 509, 520, 484 N.W.2d 540, 544 (1992).

The petitioner also asserts that he attempted to present all factual claims needed to build a record to the state court by filing a pro se § 974.06 motion for postconviction relief, but that the circuit court denied his motion for an evidentiary hearing and then dismissed his motion. The court interprets this assertion as arguing that the petitioner needed an evidentiary hearing to build a factual record for purposes of filing his petition for habeas relief, and that the state court's denial of such hearing establishes cause for the petitioner's failure to exhaust his claims in state court. The court disagrees. The petitioner did not need an evidentiary hearing to raise his claims in his pro se motion for postconviction relief. Likewise, an evidentiary hearing was not needed to appeal the court's denial of his motion to the state court of appeals.

The petitioner's claim that his inability to hire private counsel and that his unfamiliarity with the law establishes cause is also without merit. There is no constitutional right to privately-retained counsel and, therefore, the inability to retain private counsel does not establish cause.

Moreover, consistent with the Sixth and Fourteenth Amendment rights to counsel and equal protection, the petitioner was appointed trial counsel, postconviction counsel, and appellate counsel. <u>See</u> <u>Douglas v. California</u>, 372 U.S. 353, 357-58 (1963); <u>State ex rel. Colemen v. McCaughtry</u>, 2006 WI 49, ¶ 16, 290 Wis. 2d 352, 714 N.W.2d 900.

After his postconviction motion and appeals were denied, the petitioner, apparently unhappy with counsels' refusal to raise claims they deemed meritless, filed a § 974.06 postconviction motion <u>pro se,</u> even though he could have requested counsel pursuant to Wis. Stat § 974.06(3)(b). The petitioner then filed the present <u>pro</u> <u>se</u> petition for a writ of habeas corpus in which he raised the sixty claims now before the court. Given that the petitioner filed his habeas petition only one month after filing his postconviction motion, it is unclear why he could not have raised the same claims he asserts now in his postconviction motion. Nor does the court see why he could not have appealed the circuit court's denial of his postconviction motion. In fact, the petitioner admits that he did not file an appeal because it was "pointless." In short, the petitioner has not established cause.

As for the claims defaulted by not appealing denial of his <u>pro</u> <u>se</u> postconviction motion, the petitioner contends that his procedural default should be excused because an appeal would have been pointless since <u>Escalona-Naranjo</u> barred any relief on procedural grounds. This assertion lacks merit. Whether appealing a postconviction motion denied on state procedural grounds would be futile is irrelevant to this court's procedural default analysis because the exhaustion requirement does not provide an exception for claims that cannot be won in state court due to procedural bars. In fact, federal courts deciding habeas petitions are barred from reviewing claims that were denied on adequate and independent state procedural grounds

rather than on the merits.  Braun v. Powell, 227 F.3d 908, 912 (7th Cir. 2000).  Again, the petitioner has failed to establish cause.

Finally, the petitioner asserts that he is innocent of the crimes for which he has been convicted.  In support of his actual innocence claim, the petitioner offers three new pieces of evidence that he insists establish his innocence: (1)  testimony from his co-defendant's parole hearing  that "the petitioner did not have a gun," (Petitioner's Brief in Support of Writ of Habeas Corpus Pursuant to 28 U.S.C. 2254 [Petitioner's Brief] at 11), (2) a sworn affidavit providing the petitioner with an alibi, (Petitioner's Second Rebuttal to Brief in Opposition to Petition for Writ of Habeas Corpus [Petitioner's Second Rebuttal] at 8), and (3) a sworn affidavit from his co-defendant recanting the statement he made to police.

It is unclear whether the petitioner asserts his innocence as a ground for habeas relief or whether he asserts his innocence as a means for overcoming procedural default on certain claims by showing a fundamental miscarriage of justice. To determine whether the new evidence could be offered to defeat procedural default, the court will begin by reviewing the petitioner's grounds for habeas relief.  In his petition, the petitioner lists as his eighth ground for relief that his trial counsel was ineffective because he did not investigate the petitioner's alibi witness.  In his brief, he states that if the jury heard the alibi witness's testimony, there is a reasonable probability that the results of his trial would have been different.[5]  Because there is an underlying constitutional claim of ineffective assistance of counsel that would otherwise be

---

[5]  The petitioner filed a motion for newly-discovered evidence offering a sworn letter from an alibi witness that he asserted would have changed the outcome of his trial.  At that stage in the habeas proceedings, it appeared that the petitioner was asserting a substantive claim of actual innocence.  As such, the court dismissed the petitioner's motion on the well-settled rule that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."  Herrera, 506 U.S. at 400 (quoting Townsend v. Sain, 372 U.S. 293, 317 [1963]).

- 15 -

defaulted, the court will treat this as a procedural claim of actual innocence pursuant to Schlup. The petitioner does not raise similar claims related to his co-defendant's parole hearing statements or recanting statement. Instead these pieces of evidence are raised for the first time in his briefs as substantive claims of innocence. As such, the court will not consider this evidence here.[6]

With regard to the alibi witness's affidavit, the petitioner must show that the evidence is new, meaning that it was not presented at trial, that it is reliable, and that it was more likely than not that a reasonable juror would not have convicted him had the jury heard the new evidence. He need not show that the evidence was newly discovered. Gomez, 350 F.3d at 679 (citing Schlup, 513 U.S. at 324). The petitioner cannot meet this burden because the affidavit provided by the petitioner's alibi witness does not support the petitioner's claim of actual innocence. The affiant states that she spent the morning with the petitioner on the day of the robbery and that he left her at noon. However, the record indicates that the robbery was committed midday, meaning that depending on the exact time of the robbery, the alibi witness may not have provided an alibi at all. Therefore, the petitioner has not established that it is more likely than not that no reasonable juror would have convicted him in light of the alibi.

---

[6] Even if the court could consider this evidence, the defendant has not met his burden of proof. With regard to the co-defendant's recanting statement, it should be noted that the petitioner never filed an affidavit in which the co-defendant recants his statement to police, nor did he identify what statement the co-defendant was recanting. In fact, a review of the trial testimony indicates that no statement made by the co-defendant was entered into evidence. The co-defendant did not testify and no police reports were entered into evidence as the petitioner repeatedly contends. Moreover, the co-defendant's statement that the petitioner did not have a gun is directly contradicted by the victim's testimony that the petitioner robbed him at gunpoint. Therefore, it cannot be said that a the jury would have found the petitioner not guilty had in light of this evidence.

For the foregoing reasons, the petitioner has failed to show (1) cause and actual prejudice or (2) that enforcing the default would lead to a fundamental miscarriage of justice. Therefore, the court will not review the petitioner's fifty-eight procedurally defaulted claims.

**The Merits**

The petitioner's only remaining claim is that his trial counsel provided ineffective assistance by failing to object to the show-up identification. The petitioner asserts that he was denied his right to effective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984). Strickland is "clearly established Federal law, as determined by the Supreme Court of the United States." See Washington, 219 F.3d at 627-628.

In Strickland, the Court stated that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686. The Court held that a convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id. If the court determines that the petitioner has failed to satisfy either component of the Strickland test, it need not address the other. See Chichakly v. United States, 926 F.2d 624, 630-31 (7th Cir. 1991).

- 17 -

The Court has instructed courts that in evaluating the performance of a trial attorney they are to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. The petitioner "has a heavy burden in proving a claim of ineffectiveness of counsel." Jarrett v. United States, 822 F.2d 1438, 1441 (7th Cir. 1987) (citing Strickland, 466 U.S. at 687). The performance of trial counsel should not be deemed constitutionally deficient merely because of a tactical decision made at trial that in hindsight appears not to have been the wisest choice. See Strickland, 466 U.S. at 689.

In a federal habeas challenge to a state criminal judgment, the question of effectiveness of counsel "is a mixed question of law and fact." Id. at 698. Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d), . . . both the performance and prejudice components of the effectiveness inquiry are mixed questions of law and fact." Strickland, 466 U.S. at 698; see also, Galowski, 891 F.2d at 635-36.

When addressing the Strickland standard on habeas review, the court does not undergo an independent analysis. Instead, as relevant to this case, the court must determine whether the Wisconsin Court of Appeals' rejection of the petitioner's ineffective assistance of counsel claim was either "contrary to, or involved an unreasonable application of" the performance and prejudice rules set out in Strickland. See Washington, 219 F.3d at 628. Here, the petitioner asserts that the court of appeals did not apply Strickland correctly.[7] He does not assert that the

---

[7] The petitioner asserts that the court should apply 28 U.S.C. § 2254(e)(1). However, subsection (e)(1) governs cases where the petitioner challenges the correctness of the state court's factual findings. Since the petitioner alleges that the state appellate court misapplied the Strickland standard, the court will proceed under 28 U.S.C. § 2254(d)(1), which sets forth the "contrary to or unreasonable application of" standard.

decision by the appeals court is contrary to the performance and prejudice rules set out in

Strickland.  Therefore, the court need only address whether the court's decision involved an

unreasonable application of Strickland.  As the court previously discussed, to pass the

unreasonable application test, the court must determine that the state court decision was both

incorrect and unreasonable.  Washington, 219 F.3d at 628.

The court of appeals found that the petitioner failed to show deficiency or prejudice and

thus affirmed the petitioner's conviction.[8]   The court explained:

> Counsel's decision not to challenge Rueger's arrest-scene identification of Clayton was a reasonable exercise of professional judgment, even if we assume that counsel could have persuaded the court to suppress the identification. Clayton told counsel that he and Rueger knew each other from previous contacts. Clayton presented a defense based on one of those previous contacts, and how it gave Rueger a motive to falsely accuse Clayton. A defense of misidentification would have directly conflicted with the defense actually presented, and a reasonable attorney could have chosen to avoid that conflict.
> Clayton notes that a successful suppression challenge would have occurred outside the jury's presence, such that raising the issue would not have presented a direct conflict between defenses. Instead, in Clayton's view, it would have permitted a choice between defenses. However, a reasonable attorney might have determined that even with suppression of the arrest scene identification, a defense based on misidentification was not a viable option. The fact remained that Clayton was wearing one of the jerseys reported as stolen shortly after the crime. A reasonable defense would have to somehow explain his possession of the jersey, and a misidentification defense would not have provided that explanation. Nor would suppression of the arrest-scene identification have prevented Rueger from identifying Clayton in court as the perpetrator, as Rueger in fact did. In short, a reasonable attorney could have recognized the weakness of a misidentification defense and abandoned it even without pursuing suppression of one part of the identification evidence.

(Respondent's Brief, Exh. E, at 4)

---

[8]  In addressing the petitioner's ineffective assistance of counsel claim on appeal, the Wisconsin Court of Appeals cited to state law, specifically State v. Johnson, 453 Wis. 2d 121, 127, 449 N.W.2d 845 (1990) and State v. Guck, 170 Wis. 2d 661, 669, 490 N.W.2d 845 (Ct. App. 1992).  However, each case quotes the standards set forth in Strickland.

The petitioner proffers no explanation supporting his assertion that the state court of appeals decision was incorrect and unreasonable. Instead, he provides a summary of this circuit's ruling in Washington, 219 F.3d at 620. He then asserts "this is what transpired in the case at bar." (Petitioner's Second Rebuttal at 9.)

In Washington, the petitioner was convicted of being a party to an armed robbery and being a felon in possession of a firearm. After exhausting his state court remedies, the petitioner filed a writ of habeas corpus alleging that his trial counsel provided ineffective assistance. After reviewing the state court's reasons for rejecting the petitioner's ineffective assistance of counsel claim, the district court found that a writ should issue because such findings were based on an unreasonable application of Strickland. The appellate court upheld the district court's ruling, finding that counsel rendered constitutionally deficient assistance by failing (1) to read a police report,[9] (2) to produce a critical alibi witness at trial, and (3) to contact other possible alibi witnesses. With regard to producing the critical alibi witness, the court found that contrary to the state courts' reasoning, "placing witness convenience above the vital interests of his client did not make Mr. Engle's decision reasonable – or even really strategic." Id. at 630. Rather, the court concluded that counsel's "minimal attempts to contact [his key alibi witness] and his failure to subpoena her until two days before she was to testify" could not be construed as reasonable, a trial strategy, or a tactical decision and did not fall within the range of professionally competent assistance envisioned by Strickland. Id. at 630. Likewise, the court found that counsel's decision not to investigate the additional alibi witnesses because he

---

[9] The court did not address this claim in its deficiency discussion because the state court had determined that failure to read the police report was deficient, but not prejudicial.

was "simply 'too busy,'" without any thought as to the potential benefits of an investigation, was not reasonable.  Id. at 631.

Although in Washington, the defendant's underlying conviction and constitutional claims are the same as the petitioner's, the circumstances surrounding the conduct of petitioner's counsel conduct are not.  Unlike Washington, in this case, trial counsel provided a reasonable explanation for not objecting to the show-up identification, despite the fact that he had grounds for challenging its constitutionality.  As the state court of appeals discussed, the petitioner was apprehended shortly after the robbery wearing one of the stolen jerseys.  Consequently, it was reasonable to conclude that a misidentification defense would not be successful because the defense needed to explain how the petitioner came into possession of the jersey.  The defense decided to present evidence showing that the victim had sold the petitioner the jersey for twenty dollars and some cocaine and then sought revenge by fabricating an armed-robbery complaint after discovering that the cocaine was fake.  Whether, in hindsight, this was the wisest strategy is irrelevant.  See Strickland, 466 U.S. at 689.   For these reasons, the court cannot conclude that the court of appeals' finding that counsel's failure to object to the show-up identification was a tactical decision was an unreasonable application of the test for deficiency set forth in Strickland.  Therefore, the petitioner's petition for habeas relief on this ground will be denied.

In sum, the petitioner procedurally defaulted fifty-eight of his fifty-nine claims and failed to show that the state court of appeals' decision as to his only addressable claim was contrary to, or a misapplication of, established federal law.  Accordingly, the petitioner's petition for a writ of habeas corpus will be denied.

**Certificate of Appealability**

On December 1, 2009, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court was amended. According to the amendment, the " district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893, and n. 4).

When a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484. As the Court explained: "This construction gives meaning to Congress' requirement that a prisoner demonstrate a substantial underlying constitutional claims and is in conformity with the meaning of the 'substantial showing' standard provided in Barefoot, 463 U.S. at 893, n.4, and adopted by Congress in ADEPA." Slack, 529 U.S. at 484.

In this case, reasonable jurists would not find the court's decision to deny the petition on procedural or substantive grounds debatable or wrong. Thus, the court will deny a certificate of appealability as to all of the petitioner's claims.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this <u>22nd</u> day of November, 2011.

BY THE COURT:

/s Patricia J. Gorence
Patricia J. Gorence
United States Magistrate Judge